PRESIDENT, DIRECTORS, &c. OF THE NEPONSET BANK *vs.* DANIEL LELAND, Jr.

Where a negotiable note is indorsed to a bank by the payee, as collateral security for one only of several demands on which he is liable, the bank has no lien on such note as security for any other demand against the indorser: And in a suit on such indorsed note, brought by the bank against the maker, after the demand which it was pledged to secure has been paid, the maker, acting under the authority of the indorser, may successfully defend against the right of the bank to recover.

ASSUMPSIT on two promissory notes made by the defendant, payable to Addison Boyden or order, and by him indorsed in blank. One of these notes was dated December 10th 1840, and payable in five months ; the other was dated January 6th 1841, and payable in four months.

The case was submitted to the court on the following facts : On the 12th of October 1840, the plaintiffs discounted for said Boyden a note for $ 300, signed by Daniel Leland, sen. dated September 26th 1840, payable to said Boyden, or order, in four months, and indorsed by him. This note was not paid by the maker, at maturity, and the indorser had due notice of its dishonor. But the note lay in the plaintiffs' hands unpaid, till May 5th 1841.

On the 11th of January 1841, the plaintiffs discounted for said Boyden a note for $ 113, which was dated on the 1st of said January, payable to him, or order, in four months, signed by Seth C. Hawes, and indorsed by said Boyden.

On the day of the maturity of the aforesaid note of $ 300, signed by said Daniel Leland, sen. (viz. January 29th 1841) said Boyden pledged to the plaintiffs the notes now in suit, by indorsing them in blank, expressly as collateral security for payment by him, as indorser, of said $ 300 note.

On the 5th of May 1841, said Daniel Leland, sen. paid said $ 300 note, and, as agent for his son, the present defendant, asked the plaintiffs to deliver up the notes now in suit, which they refused to do, on two grounds ; *first*, because they had a lien on those notes to secure payment of the abovementioned note signed by Hawes ; and *secondly*, because said Daniel Leland, sen. showed no authority from Boyden to take the notes.

On the 4th of May 1841, said Boyden received due notice from the plaintiffs that said note of Hawes, indorsed by him, was dishonored, and thereby became liable, as indorser, to pay the same to the plaintiffs. But said note has never been paid.

In June 1841, the defendant, professing to act solely as agent of said Boyden, with a written authority from him, demanded of the plaintiffs the notes now in suit; but the plaintiffs refused to deliver the same, claiming a right to retain them as security for the payment, by said Boyden, of the Hawes note by him indorsed. This claim they notified to Boyden on the 5th of May 1841, the day after said Hawes's note was dishonored.

The defendant was at the plaintiffs' banking house, soon after the notes now in suit were pledged by said Boyden, as aforesaid, and long before either of them fell due ; and these notes were shown to him by the plaintiffs, and he averred that they were business notes, and promised the plaintiffs that he would pay both of them on the day when the first of them should fall due But no payment on either of said notes has been made to the plaintiffs or to said Boyden.

*E. Ames*, for the plaintiffs. Bankers, who discount bills or notes for a customer, have a lien, while such bills or notes remain unpaid, upon his negotiable securities that come into their hands, and may put the same in suit. *Bolland* v. *Bygrave*, Ry. & Mood. 271. See also *Davis* v. *Bowsher*, 5 T. R. 488. *Jourdaine* v. *Lefevre*, 1 Esp. R. 66. *Bosanquet* v. *Dudman*,

1 Stark. R. 1. *Scott* v. *Franklin*, 15 East, 428. The defendant cannot object to the maintenance of this action by the plaintiffs, as they hold the notes under the indorsement of the payee. It is a question between Boyden and the plaintiffs, how the money, when collected, shall be applied.

*Cleveland*, for the defendant. These notes, though pledged by Boyden after the plaintiffs had discounted Hawes's note for him, were pledged as security only for payment of the note of Leland, sen. This fact shows that the plaintiffs received the notes "under special circumstances," which, as Lord Kenyon said, in *Davis* v. *Bowsher*, take the case "out of the common rule" as to bankers' general lien. See Story on Agency, § 381. Montagu on Lien, (Amer. ed.) 46, 47. Admitting that by the law of England, the plaintiffs might recover on these notes, yet they cannot recover by the law of Massachusetts. There is no known adjudication in the United States, which recognizes the English law as to bankers' general lien. And it may be doubted whether our incorporated banks come within the reason of the English law concerning bankers. Besides ; general liens are not regarded with particular favor, as particular liens are, and must be established by clear evidence of usage, or the particular dealings of the parties. Yelv. (Amer. ed.) 67 *h*, and cases there cited.

As the defendant acts under the authority of Boyden, in resisting the plaintiffs' claim, they cannot deny his right to make defence.

DEWEY, J. The plaintiffs contend that they are entitled to enforce the collection of the notes of the defendant, and hold the avails thereof to be adjusted in a general settlement of their dealing with Addison Boyden. They rely upon the principle, that a banker has a lien on all the paper securities which come into his hands, for a general balance. And the general principle, subject to its proper limitations, may be well sustained by authorities : As in *Bolland* v. *Bygrave*, Ry. & Mood. 271, which was a case of bills delivered by a party to be discounted in the ordinary course of business, and where it was held, in the opinion given by Abbott, C. J., that a banker has a lien upon

any securities of the customer, which may for any purpose be placed in his hands. Lord Kenyon, in *Davis* v. *Bowsher*, 5 T. R. 491, states the principle thus : " I am clearly of opinion that by the general law of the land a banker has a general lien upon all the securities in his hands, belonging to any particular person, for his general balance, unless there be evidence to show that he received any particular security under special circumstances which would take it out of the common rule." Judge Story, in his treatise on Agency, § 381, places the matter in its true light. He states the general principle as before stated by Lord Kenyon, and C. J. Abbott, giving the banker a general lien upon all notes, bills and other securities deposited with him by his customer, for the balance due on general account ; but he adds, " here, as in other cases of lien, the right to retain for the general balance of accounts may be controlled by any special agreement which shows that it was not intended by the parties. Thus, for example, if securities have been deposited with a banker as a pledge for a specific sum, and not generally, that will repel the inference that they were intended to give a lien for the general account or balance between the parties."

In recurring to the facts agreed upon in the present case, it appears distinctly, that the notes in controversy were pledged by Addison Boyden to the plaintiffs, expressly as collateral security for his engagement as indorser of a note for $ 300 given by Daniel Leland, sen., discounted by the plaintiffs, and not paid at its maturity. That note being subsequently paid by Leland, sen., these notes ceased to be held on the particular pledge ; and the inquiry then arises, whether upon any principle of the law of lien, they may be retained against the will of the pledgor or those who represent him, and be treated as collateral security for other liabilities of Addison Boyden created before the deposit of these notes with the plaintiffs ; for it must be carried to that extent, as the note of Hawes was indorsed by Boyden, months before the transfer of these notes as collateral security for Boyden's liability on the note of Leland.

Taking the principles, as found in the cases cited, to be applicable in this Commonwealth, and assuming also the plaintiffs'

relation to Addison Boyden to be that of a banker, it seems quite clear to us, that the plaintiffs did not acquire any lien on the notes in suit, for any precedent liabilities of Boyden, by reason of his having indorsed other notes besides that of Leland. This is not a case of an implied lien. The notes were deposited under special circumstances ; they were not pledged generally, but specifically ; and this negatives any inference of any general lien, if, in the absence of such special agreement, the law would imply one. In any view we can take of this case, we can perceive no ground on which the plaintiffs can establish a right to retain these notes.

It was suggested at the argument, that as the plaintiffs held these notes under a regular transfer of the legal title, it was not competent for the defendant to take the objection of the want of interest, or want of property in the same, in the plaintiffs. This might be a good answer, if the defence was only taken at the instance of the defendant ; but inasmuch as the defendant acts with the assent and concurrence of Boyden, and with a written power of attorney from him to demand these notes of the plaintiffs, we think he may interpose the defence relied upon, and that, for the reasons already stated, it must avail him.

*Plaintiffs nonsuit.*